In re D.W. WALTERS ENTERPRISES, INC., Debtor.

No. 9:03–bk–15990–ALP.

United States Bankruptcy Court, M.D. Florida, Fort Myers Division.

Jan. 17, 2006.

David W. Steen, David W. Steen, PA, Tampa, FL, Joel W. Walters, Walters, Levine, Brown et al., Sarasota, FL, for Debtor.

## ORDER ON DEBTOR'S OBJECTION TO CLAIM NO. 34 FILED BY S.T.D. ENTERPRISES OF NAPLES, INC. (CREDITOR) (Doc. No. 377)

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE MATTER under consideration in this confirmed Chapter 11 case of D.W. Walters Enterprises, Inc., (the Debtor or D.W. Walters) is an Objection to Claim No. 34 filed by S.T.D. Enterprises of Naples, Inc. (S.T.D.). The Proof of Claim

was originally filed in the amount of $60,737.28. Based on a clerical error, S.T.D.'s claim is actually for the principal sum of $55,308.00, plus pre-petition interest in the amount of $1,663.47, for a total amount of $56,971.47. It is the contention of the Debtor that the amount of the claim filed by S.T.D. is excessive and the claim should be allowed in the reduced amount of $40,000.00. The Debtor's contention is based on: (1) the rates S.T.D. charged the Debtor for hauling fill dirt (fill) and base rock (base) material and (2) the number of loads of fill and base S.T.D. actually delivered to the Debtor.

In due course the Objection to Claim No. 34 filed by STD (Objection) was set for Final Evidentiary Hearing. At the duly scheduled and noticed hearing on the Objection, this Court heard argument of counsel for the Debtor, and for STD. In addition, this Court has considered the record including testimony of witnesses and all documentary evidence offered and admitted into evidence and now makes the following findings and conclusions based on the record.

Prior to the commencement of this Chapter 11 case, the Debtor was the site development, underground or utilities subcontractor to Lodge Construction Inc. (Lodge Construction) on six construction projects in Southwest Florida. Under its contract with Lodge Construction, the Debtor was the site developer on the Upriver Campground (Upriver) and the Immokalee Dormitory (Immokalee) projects.

The Debtor hired S.T.D. to haul and deliver fill and base to the various Southwest Florida projects. Although the relationship of the parties was never formalized, it is without dispute that the Debtor employed S.T.D. to render hauling services for the Upriver and the Immokalee projects.

During the relevant time the Debtor received invoices from S.T.D. The Debtor's representative, Ms. Amburgey "would pull that day's package and verify the ticket numbers," confirm the number of tickets, the materials delivered and the amounts charged for the each load.[1],[2] If Ms. Amburgey determined the amount of the invoice was different from the amount that was owed by the Debtor she would contact Daniel Montero (Mr. Montero), comptroller of S.T.D. to make the appropriate corrections. It is Ms. Amburgey's contention that when she contacted Mr. Montero and discussed the specific discrepancies, he "acknowledged the correct amount,"[3] or would tell her "to correct the bill,"[4] or "adjust [the specific] invoice."[5]

The following are the specific Invoice numbers which are in dispute, the amount S.T.D. billed D.W. Walters, the amount per invoice the Debtor claims is the correct amount due to S.T.D., and the reason for the discrepancy:

| Invoice Number | Invoice Amount | Debtor's Amount | Discrepancy |
|---|---|---|---|
| 30764 | $ 11,716.00 | $ 11,600.00 | 2 tickets missing |

1. *Id.* Trial Trans. 18, 20–24. As further reference, when material was delivers to a specific site, the dump-truck driver for S.T.D. would provide the superintendent, or the person on the site on that particular date, with a ticket describing the delivery of fill or base. At the conclusion of the day, all tickets were taken into the office by the above-mentioned individuals, counted, placed into a package and held until the invoices were received by the Debtor.

2. *Id.* Trial Trans. 18, 25 and 19, 1.

3. *Id.* at 42, 1–5.

4. *Id.* at 42, 23–43, 2.

5. *Id.* at 45, 8–9.

| | | | Creditor– |
|---|---|---|---|
| 30778 | 1,856.00 | 0.00 | Citifactors [6] |
| 30881 | 8,330.00 | 5,745.00 | 4 tickets missing |
| 30931 | 11,760.00 | 9,075.00 | 3 tickets missing |
| 30982 | 4,270.00 | 3,327.00 | 1 ticket missing |
| 30983 | 4,183.00 | 2,262.00 | 8 tickets missing |
| 31047 | 5,250.00 | 3,310.00 | 5 tickets missing |
| 31112 | 2,730.00 | 2,145.00 | Amount per load |
| 31113 | 580.00 | 580.00 | No discrepancy |
| 31161 | 2,380.00 | 1,460.00 | 2 tickets missing |
| 31181 | 1,869.00 | 1,102.00 | 2 tickets missing |
| 31215 | 2,240.00 | 1,760.00 | Amount per load |
| Total | $ 57,236.00 | $ 42,366.00 | |

It appears from the record the discrepancy between the parties is a result of: (1) missing delivery tickets, (2) S.T.D. charging a higher amount per load than what was agreed upon, (3) S.T.D. charging the same amount per load for different types of material delivered, and (4) whether or not certain conversations took place between the Debtor's representative and Mr. Montero.

Ms. Amburgey stated at the hearing that she counted the number of delivery tickets daily, and S.T.D. had charged the Debtor for more loads than were actually received. Therefore, the Debtor contends that Invoice No. 30764 was missing two tickets, and as a result, the claim should reflect the reduced amount of $116.00. Ms. Amburgey testified that, in addition to missing tickets, the amount per load charged by S.T.D. was not the agreed upon amount. S.T.D. also charged the same amount per load for different material delivered, which should have been invoiced at a different dollar amount.

The following are the discrepancies which Ms. Amburgey contends Mr. Montero agreed to adjust and/or correct:

(1) Invoice No. 30881—in addition to four missing tickets, S.T.D. charged the Debtor $70.00 dollars per load. Ms. Amburgey testified that the correct amount charged should have been as follows: (a) 57 loads of fill at $55.00 per load, and (b) 58 loads of base at $45.00 per load.

(2) Invoice No. 30981—in addition to three missing tickets, S.T.D. should have charged the Debtor $55.00 dollars per load and not $70.00 per load.

(3) Invoice No. 30982—in addition to one missing ticket, there were two different jobs and the amounts charged should have been as follows: (a) Upriver—51 loads at $55.00 per load, and (b) Dormitory—9 loads at $58.00 per load.

(4) Invoice No. 30983—in addition to the eight missing tickets, the amount charged should have been $58.00 per load.

(5) Invoice No. 31047—in addition to the five missing tickets, there were two different materials delivered and the amount charged should have been as follows: (a) 16 loads of fill at $55.00 per load, and (b) 54 loads of base at $45.00 per load.

(6) Invoice No. 31112—S.T.D. charged the Debtor $70.00 per load, the Debtor contends the amount charged should have been $55.00 per load.

(7) Invoice No. 31161—in addition to the two missing tickets, the amount charged should have been as follows: (a) 30 loads of base at $45.00 per load, and (b) 2 loads of fill at $55.00 per load.

(8) Invoice No. 31181—in addition to the two missing tickets, the Debtor con-

6. The parties stipulated that Invoice No. 30778, in the amount of $1,856, had been assigned to another creditor, Citifactors, therefore, S.T.D.'s claim shall be reduced by the foregoing amount. Trial Trans. 35, 24–36, 16.

tends that the incorrect dollar amount per load was charged and the correct amount should have been $58.00 per load.

(9) S.T.D. charged the Debtor $70.00 per load, the Debtor contends the amount charged should have been $55.00 per load.

Thus, based on Ms. Amburgey's calculations, the correct amount owed to S.T.D. for the foregoing invoices was, $42,366.00.

The Debtor also called Darrel Walters (Walters) to testify on rebuttal. Walters testified that he had never agreed to the rate of $70.00 per load on the Upriver project nor did he agree to the rate of $89.00 per hour with respect to the Immokalee project. Walters also stated that he was the only person who has the authority to set the rates for D.W. Walters and that no one, other than himself, had the authority to bind D.W. Walters of any financial commitments. Walters further testified that he was present on various occasions when Ms. Amburgey contacted Montero regarding the incorrect invoices

In addition to the Proof of Claim, in support of its claim, S.T.D presented the testimony of Bern Smith (Mr. Smith), a salesman of S.T.D., who was responsible for negotiating the verbal agreements with the Debtor. Mr. Smith testified that he negotiated rates with "Mike" of D.W. Walters. As stated above, Walters testified that Mike did not have the authority to set rates for D.W. Walters.

In further support of their claim, S.T.D. presented the testimony of Danny Montero who claimed he did not have any conversation with Ms. Amburgey regarding any of the discrepancies outlined above. Montero maintained that the only conversations he had with Ms. Amburgey regarded past due invoices and Mr. Montero

testified that, when the Debtor was going to pay S.T.D., he spoke with Ms. Amburgey "at least a dozen times," and they never discussed any invoicing discrepancies.[7]

S.T.D. has made only broad denials of having any contact with Ms. Amburgey despite her and Mr. Walters's contentions that several conversations regarding invoice discrepancies took place. As noted before, in rebuttal to Mr. Smith's testimony that he had discussed rates with "Mike" of D.W. Walters, Mr. Walters testified that Mike did not have the authority to set rates for the company. No further evidence was presented to support these claims of S.T.D.

While it is true if a proof of claim was filed in the proper form, it carries the presumptive validity of the claim. Once an objection is interposed either to the validity or the amount claimed, the presumption is overcome and the ultimate burden to establish with the requisite degree of proof the validity or the amount of the claim falls upon the creditor. *See In re O'Callaghan,* 304 B.R. 500 (Bankr.M.D.Fla.2003); *See also In re Harford Sands Inc.,* 372 F.3d 637 (4th Cir.2004). If the evidence is in equilibrium and equally consistent with the position of the creditor and debtor, the creditor failed to carry its burden and the objection should be sustained. In the present instance, the Debtor does not challenge the validity of the claim, but does contend that the amount is excessive. Thus, the claim shall be allowed albeit in the reduced amount of $42,366.00.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Objection to Claim No. 34 filed by S.T.D. Enterprises of Naples,

7. Trial Trans. 121, 1.

Inc. (Doc. No. 377) be, and the same is hereby, sustained in part. It is further

ORDERED, ADJUDGED AND DECREED that Claim No. 34 of S.T.D. Enterprises of Naples, Inc. be, and the same is allowed as an unsecured claim in the reduced amount of $42,366.00.

DONE AND ORDERED.

